UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD E. McCANNA,

    Plaintiff,

v.                                                Case No. 2:08-cv-421
                                                Honorable Patrick J. Duggan[*]

GREGORY W. EAGLE,

    Defendant.
_____/

## OPINION AND ORDER

This action arises out of a number of business arrangements between Richard E. McCanna ("Plaintiff"), Gregory W. Eagle ("Defendant"), and Steeven Knight. Plaintiff alleges that, through the course of their business relationship, Defendant violated § 10b of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), violated Chapter 517 of the Florida Statutes, committed fraud in the inducement, made negligent misrepresentations, and owes money paid by Plaintiff. Presently before the Court is Defendant's Motion to Dismiss Complaint or in the Alternative to Stay Action Pending Arbitration. For the reasons set forth below, the Court denies the motion.

**I. Background**

In or around late 2005, Steeven Knight approached Plaintiff with an idea to purchase and develop properties for use in private yacht club marinas. Knight's plan involved

---

[*]United States District Court Judge for the Eastern District of Michigan sitting by assignment.

purchasing waterfront properties in Tampa, Naples, and Key West on which to construct dry and wet boat storage slips, clubhouses, and support facilities. Knight further envisioned selling the boat storage slips as "rackominiums" and "dockominiums" to boat owners who would also receive memberships and access to resort style amenities at the yacht club on the premises.

At the time of these discussions, Plaintiff had no prior practical or management experience with projects of the type described by Knight. Knight assured Plaintiff, however, that he had the background, knowledge, and experience to manage the project and hoped that Plaintiff would participate as a "passive investor." Before Plaintiff agreed to invest, Knight introduced Plaintiff to Defendant. Defendant presented himself as an experienced real estate investor with adequate holdings and wealth to secure loans for the funding of Knight's project. After discussing it with Knight and Defendant, Plaintiff ultimately agreed to invest $3.5 million in exchange for a one-third interest in the project.

Subsequent to his initial investment, Plaintiff alleges that he entered into a contract with Defendant whereby he agreed to give half of his interest in the project to Defendant in exchange for Defendant's agreement to put up adequate property as collateral for a $200 million loan for the project. Also, with the understanding that Defendant had pledged adequate collateral, Plaintiff agreed to sign a personal guarantee on the loan. The loan was taken out in July 2006.

In December 2006, Defendant told Plaintiff that he owed $250,000 in relation to another investment property but could not make the payment. Plaintiff agreed to lend Defendant the necessary funds. The same thing occurred in October 2007 for an amount of

2

$251,288.

Sometime after the October 2007 payment, Plaintiff learned that Defendant had misrepresented the value of the collateral pledged in support of the July 2006 loan for the yacht club project. Although Defendant represented that he fully owned three parcels of land pledged as collateral, Defendant actually owned 36% or less of a beneficial interest in each parcel. Plaintiff alleges that, had he known of the insufficiency of the pledged collateral, he would not have sold half of his interest in the project to Defendant, he would not have signed the personal guarantee on the loan, and he would not have made over $500,000 in personal loans to Defendant.

Plaintiff filed the present action on May 23, 2008. On July 7, 2008, Defendant filed his Motion to Dismiss Complaint or in the Alternative to Stay Action Pending Arbitration. In the motion, Defendant argues that Plaintiff has failed to state a securities fraud claim upon which relief may be granted and failed to plead that claim with the requisite particularity. In the event that the Court agrees and dismisses the securities fraud claim, Defendant requests that this Court decline to exercise supplemental jurisdiction over the Plaintiff's remaining state claims. In the event that the Court disagrees and retains the securities fraud claim, Defendant argues that the entire suit is subject to an arbitration agreement and should therefore be dismissed or stayed pending arbitration. The motion has been fully briefed and the Court held a hearing on April 8, 2009.

**II. Motion to Dismiss Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the factual sufficiency of the plaintiff's complaint. In considering the motion,

the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" and construe those facts in a light favorable to the plaintiff. *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S .A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Even so, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[;]" indeed, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 127 S. Ct. at 1965.

Additionally, Plaintiff's securities fraud claim must meet the heightened pleading requirements for fraud claims imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) is satisfied where the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotation omitted).

Finally, Courts considering a motion to dismiss must ordinarily confine their analysis to the face of the complaint and attachments thereto. *Brooks*, 116 F.3d at 1368. An exception exists, however, where "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d

4

1276, 1284 (11th Cir. 2007). A document is "central" to a plaintiff's claim where the plaintiff would unquestionably have to offer a copy of it in order to prove his or her case. *Id.* at 1285.

In this case, Defendant attached to his motion a number of organizational and operating agreements relating to various limited liability companies ("LLCs") formed amongst Plaintiff, Defendant, and Knight as they pursued the yacht club project. Defendant argues that, although Plaintiff does not refer to these documents in his complaint, they are central to Plaintiff's securities fraud claim. According to Defendant, the purported "security" at issue is Plaintiff's ownership interest in the LLCs. Plaintiff responds, however, that the "security" at issue is really his interest in the yacht club project itself and that the sale that forms the basis for his securities fraud claim pre-dates the LLC agreements. Plaintiff's argument is supported by the averments set forth in his complaint which, at this stage in the litigation, the Court must accept as true. (*See* Compl. ¶¶ 20-21.) Consequently, the Court does not consider Defendant's attached documents in deciding the present motion.

**III. Securities Fraud**

§ 10(b) of the Securities Exchange Act of 1934 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

5

15 U.S.C. §78j(b). Rule 10b-5, set forth by the Securities and Exchange Commission, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To state a claim under the statute and Rule 10b-5, a plaintiff must demonstrate, in relation to the purchase or sale of a security, "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Defendant argues that Plaintiff's complaint fails to allege sufficiently each of the elements of a securities fraud claim.

**A. Purchase or Sale**

In order to support a Rule 10b-5 claim, "there must be an enforceable contract for the 'purchase or sale' of securities." *Pelletier v. Stuart-James Co., Inc.*, 863 F.2d 1550, 1559 (llth Cir. 1989). Relying on the various documents attached to his motion, Defendant argues that Plaintiff has failed to allege a "purchase or sale" because the division of ownership interests in the LLCs has been constant since their formations. Defendant further asserts that, aside from the LLCs, Plaintiff had no pre-existing interest in the yacht club project that could

6

be subject to a purchase or sale.

As noted above, the Court cannot consider Defendant's attached documents in deciding this motion to dismiss. Consequently, Defendant's argument regarding the division of ownership interests in the LLCs is irrelevant at this stage of the proceeding. And regardless of Defendant's claims to the contrary, Plaintiff has at least alleged that he possessed a one-third interest in the yacht club project prior to the formation of the LLCs, half of which he claims to have sold to Defendant. (Compl. ¶¶ 20-21, 40.) Whether Plaintiff can prove that he once had a one-third interest in the yacht club project or that he sold a portion of that interest to Defendant is not presently before the Court; for purposes of this motion to dismiss, it is sufficient that Plaintiff made those allegations.

**B. Existence of a "Security"**

Defendant next argues that Plaintiff has failed to allege wrongful conduct in connection with the purchase or sale of a "security." The Securities Exchange Act of 1934 defines a "security" as, among other things, "any note, stock, treasury stock, security future, bond, . . . investment contract, . . . or in general, any instrument commonly known as a 'security' . . . ." 15 U.S.C. § 78c(a)(10). In this case, the sufficiency of Plaintiff's complaint turns on whether he has sufficiently alleged the existence of an "investment contract." The Supreme Court defined an investment contract as:

> a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

7

*SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99, 66 S. Ct. 1100, 1103 (1946).

Proceeding under the assumption that Plaintiff's claim involves the alleged sale of an ownership interest in the LLCs, Defendant argues that Plaintiff has failed to identify a "security" as required for his claim. In support of his argument, Defendant again cites the documents attached to his motion that purportedly demonstrate that Plaintiff was an active participant in the control of the LLCs. As noted above, however, Plaintiff maintains that his claim involves his pre-existing interest in the yacht club project as a "passive investor" rather than his ownership interest in the LLCs. Furthermore, Plaintiff asserts that, if the LLC agreements are considered, they actually demonstrate that he lacked the ability to control or even have an impact on the activities of the LLCs.

Once again setting aside the content of the documents attached to Defendant's motion, the Court concludes that Plaintiff's complaint sufficiently alleges the existence of an "investment contract." In the complaint, Plaintiff avers that "[a]t the time Knight and [Plaintiff] were discussing the Project, [Plaintiff] had no previous practical or management experience with projects involving the construction or sale of dockominiums and rackominiums, nor did he have any practical or management experience with the purchase or management of yacht clubs or marinas in general" and that "Knight represented that he would manage the Project and that [Plaintiff] would, in effect, be a passive investor." (Compl. ¶¶ 13, 16.) The complaint goes on to state that, relying on Knight's and Defendant's representations regarding their ability to manage the yacht club project, "[Plaintiff] was persuaded to invest, and did invest, Three Million Five Hundred Thousand Dollars ($3,500,000) in the Project. For his investment, [Plaintiff] was to receive, and did receive,

8

a one third interest (1/3) in the Project." (Compl. ¶ 20.) Altogether these statements sufficiently allege that Plaintiff engaged in a transaction whereby he invested his money in a common enterprise and was led to expect profits solely from the efforts of Knight and Defendant. (*See also* Compl. ¶¶ 38-39.) Therefore, Plaintiff's complaint sufficiently alleges the existence of a "security" in the form of an "investment contract."

**C. Material Misstatement or Omission**

Defendant next argues that Plaintiff failed to allege material misstatement or omission. To satisfy this element of his claim, Plaintiff must identify specific misstatements or omissions made by Defendant. In regard to the materiality requirement, the question "is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (internal quotations omitted). The issue of materiality, however, "is not typically resolved at the motion to dismiss stage-unless the misrepresentations are so obviously unimportant to an investor that reasonable minds cannot differ." *Bellocco v. Curd*, No. 802cv1141T27TBM, 2005 WL 2675022 at *3 (M.D. Fla. Oct. 20 2005) (internal quotations omitted).

In this case, Plaintiff's complaint specifically identifies three misstatements made by Defendant regarding his ownership interest in three parcels of land and his ability to pledge those properties as collateral for the July 2006 loan. (Compl. ¶¶ 23, 26-27.) Plaintiff further alleges that "[h]ad [Defendant] not misrepresented the value of the collateral he was putting up to obtain and guarantee the 2006 Loan, [Plaintiff] would not have given up a percentage of his interest in the Tampa, Naples, and Key West projects to [Defendant] . . . ." (Compl.

9

¶ 34; *see also id.* ¶ 41-42.) These claims sufficiently allege material misstatements to survive a motion for to dismiss.

**D. Scienter**

The next element of a securities fraud claim is scienter. In the context of a Rule 10b-5 claim, scienter exists where a defendant acts with "an intent to deceive, manipulate, or defraud, or severe recklessness." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (internal quotations omitted). Severe recklessness exists where a defendant makes

> highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.2 (11th Cir.1999) (internal quotations omitted). Sufficiently pleading the element of scienter requires that a plaintiff "plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S. Ct. 2499, 2513 (2007).

The Court finds that Plaintiff has sufficiently pled scienter. Plaintiff's complaint indicates that Defendant knowingly overstated his ownership interest in three properties by 66% to 80%. (Compl. ¶¶ 27, 42-44.) The complaint further alleges that those overstatements induced Plaintiff to sell Defendant a portion of his interest in the yacht club project, sign a personal guarantee for the July 2006 loan, and lend Defendant over half a million dollars. (Compl. ¶¶ 21, 25, 34, 40-41, 45-46.) Under the circumstances alleged in the complaint,

which the Court must accept as true at this stage of the litigation, it is at least as likely that Defendant intended to deceive Plaintiff when he knowingly overstated his ownership interests in the three properties as any other opposing inference.

**E. Reliance and Injury**

Finally, Defendant asserts that Plaintiff's complaint fails to allege reliance or proximate injury. To make this argument, Defendant returns once again to the documents attached to his motion. At this time, the Court cannot use those documents to overcome the clear allegations of reliance and injury contained in Plaintiff's complaint. Among other averments of reliance and injury, the complaint states:

> Had [Defendant] not misrepresented the value of the collateral he was putting up to obtain and guarantee the 2006 Loan, [Plaintiff] would not have given up a percentage of his interest in the Tampa, Naples, and Key West projects to [Defendant], would not have guaranteed the 2006 Loan, nor would he have loaned [Defendant] $501,288.

(Compl. ¶ 34.) This statement sufficiently pleads reliance and injury. Therefore, the Court concludes that Plaintiff has pled each element of a securities fraud action and denies Defendant's motion to dismiss count one of Plaintiff's complaint for failure to state a claim.

**IV. Rule 9(b) Particularity**

As previously discussed, Rule 9(b) of the Federal Rules of Civil Procedure impose heightened pleading requirements on fraud claims. To survive a motion to dismiss for failure to state a claim in light of Rule 9(b)'s requirements, Plaintiff's complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not

> making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotation omitted). Defendant's argument that Plaintiff has failed to meet these requirements lacks merit.

As observed above in relation to the elements of a securities fraud claim, Plaintiff's complaint identifies Defendant's alleged fraud with sufficient particularity to satisfy the requirements of Rule 9(b). Plaintiff's complaint identifies Defendant as the maker of misrepresentations regarding his ownership of three parcels of property and his ability to pledge those properties as collateral for the July 2006 loan. (Compl. ¶¶ 23, 26-27, 40-43.) The complaint alleges that Defendant made these representations in person and through the use of phone, mail, and internet at some point after late 2005–when Knight first discussed the yacht club project with Plaintiff–and before the obtainment of the July 2006 loan. (Compl. ¶¶ 8, 13, 23-25.) Finally, the complaint asserts that, among other things, Defendant's misrepresentations led Plaintiff to sell Defendant half of his interest in the yacht club project. (Compl. ¶ 21, 34, 41, 46.) Therefore, Plaintiff's complaint pleads an action for fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.

**V. Supplemental Jurisdiction**

Defendant also requests that this Court dismiss Plaintiff's state law claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction. Defendant notes that this Court has subject matter jurisdiction over this action only because of the federal issue raised in the securities fraud claim. Anticipating that the Court would dismiss

that count, Defendant argues that dismissal of the remaining state law claims is appropriate under 28 U.S.C. § 1367(c)(3). Because the Court finds that Plaintiff sufficiently pled a securities fraud claim, it remains appropriate for the Court to retain Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## VI. Arbitration

Finally, Defendant argues in the alternative that the entire action should be dismissed or stayed because Plaintiff's claims are subject to enforceable arbitration agreements. The arbitration agreements referred to by Defendant appear in the LLC operating agreements attached to Defendant's motion. "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960)). The arbitration agreements cited by Defendant provide, "Any dispute, controversy or question of interpretation of or relating to this agreement or any agreement hereto, shall be settled by arbitration . . . ." (Def.'s Mot. At 23.) Where arbitration agreements include the "relating to" language, the issue of whether a claim relates to the agreement depends on whether it "was an immediate, foreseeable result of the performance of contractual duties. Disputes that are not related–with at least some directness–to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." *Telecom Italia*, 248 F.3d at 1116.

As pled, Plaintiff's claims are not the immediate, foreseeable results of the

13

performance of the LLC operating agreements. According to Plaintiff, the conduct that is the basis for the first four counts–securities fraud, violation of Chapter 517 of the Florida Statutes, fraud in the inducement, and negligent misrepresentation–pre-dates the signing of the various LLC operating agreements.[1] Because the conduct occurred before Plaintiff signed the LLC operating agreements, his claims cannot be said to have been the immediate, foreseeable result of the performance of those agreements. Plaintiff's last claim for money paid involves loans Plaintiff made to Defendant for use on projects unrelated to the LLCs of which the parties are members. Therefore, this claim is also separate from the agreements containing arbitration clauses. For these reasons, the Court denies Defendant's motion to compel arbitration.

## VII. Conclusion

Despite Defendant's claims to the contrary, Plaintiff has sufficiently pled each element of his securities fraud claim even to the degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Because the Court denies Defendant's motion to dismiss Plaintiff's securities fraud claim, the Court will retain jurisdiction over Plaintiff's other state law claims pursuant to 28 U.S.C. § 1367(a). Finally, the Court concludes that the claims alleged by Plaintiff do not relate to the LLC operating agreements that contain arbitration clauses.

Accordingly,

---

[1] The LLC operating agreements–the documents that contain the arbitration agreements–were signed on June 30, 2006, and reflect that Plaintiff has an ownership interest of just over 16% in each LLC. Plaintiff alleges that, prior to Defendant's fraudulent conduct, he held a one-third interest in the yacht club project.

**IT IS ORDERED** that Defendant's Motion to Dismiss Complaint or in the Alternative to Stay Action Pending Arbitration is **DENIED**.

                                                     <u>s/PATRICK J. DUGGAN</u>
                                                     UNITED STATES DISTRICT JUDGE

Date: May 5, 2009

Copies to:
Robert S. Bolt, Esq.
Michael D. Allweiss, Esq.